# UNITED STATES DISTRICT COURT
for the
Eastern District of California

**FILED**
AUG 03 2018
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

In the Matter of the Search of: )
)
One gold Samsung Galaxy S6 Edge cell phone, and ) Case No.
one black Samsung cell phone, processed into )
evidence on June 6, 2018, in connection with ) 2:18-SW-0621 DB
Vacaville Police Department Case No. 18-04702. )
)

## APPLICATION FOR A SEARCH WARRANT

I, Michael A. Miller, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**See ATTACHMENT A, attached hereto and incorporated by reference.**

located in the ____ Eastern ____ District of ____ California ____, there is now concealed *(identify the person or describe the property to be seized)*:

**See ATTACHMENT B, attached hereto and incorporated by reference.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with intent to distribute 500 grams or more of methamphetamine. |

The application is based on these facts:

**See affidavit of FBI Task Force Officer Michael A. Miller, attached hereto and incorporated by reference.**

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 ____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_/s/ Applicant's signature_
Michael A. Miller, FBI Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: August 3, 2018

_/s/ Judge's signature_

City and state: Sacramento, California        Hon. Deborah L. Barnes, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH ELECTRONIC DEVICES

I, Michael A. Miller, being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the forensic examination of property (i.e., two electronic devices further described in Attachment A) which are currently in law enforcement's possession, and the extraction from that property of electronically stored information further described in Attachment B.

2. I am a Detective with the Vacaville Police Department. I have been a sworn peace officer with the City of Vacaville for the past 16 years. I served as a peace officer with the Oakland Police Department for two years before that. In January 2017, I was cross-designated as a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI), Sacramento Division, Fairfield Resident Agency. In this role, I am responsible for investigating firearms-, narcotics-, and gang-related activity in Solano County as a member of the Solano County Violent Crimes Task Force.

3. I have received thousands of hours of formal training with the Oakland and Vacaville Police Departments. This includes: 1,051 hours at the P.O.S.T. basic police academy (1999); 40-hour Interview and Interrogation course (2002); 80-hour Basic SWAT Operator course (2004); 80-hour Major Drugs / Narcotics Investigations course (2014); 16-hour Search Warrants "A through Z" course (2014); 24-hour Informant Development and Maintenance course (2015); 16-hour Child Exploitation Investigation course (2016); 8-hour California State Wiretap Certification (2016); 40-hour SWAT Team Leader School (2016); and 16-hours in attendance at the WSIN Human Trafficking Summit (2017).

4. In addition to my classroom training, I have been involved in over 100 narcotics-related investigations, and over 100 human-trafficking investigations. I have testified as an expert over thirty times in the field of narcotics possession and sales, and seven times in the field of human trafficking, in the Solano County Superior Court. I have also testified as an expert in the area of firearms functioning and identification, as well as with respect to the Cellebrite data extraction process. In my 18-year career in law enforcement, I have participated in all aspects of criminal investigations, including physical and electronic surveillance, executing search warrants, use of GPS data and tracking devices, interviews, and arrests. In addition to my classroom training, this practical experience has formed the basis of my opinions set forth below.

5. As a result of my training and experience with the Oakland PD, the Vacaville PD, and the FBI, I am familiar with the state and federal laws pertaining to controlled substances. I know that it is unlawful under Title 21 of the United States Code to possess controlled substances with the intent to distribute them. I also know that <u>methamphetamine</u> is listed as a Schedule II controlled substance under 21 U.S.C § 812(c).

6. The information contained in this Affidavit is based on my review of the reports and files in this case, conversations with other law enforcement personnel involved in this case, and my own personal knowledge. Because this Affidavit is submitted for the limited purpose of establishing probable cause for a search, I have not included every fact known to me about this case. Rather, I have set forth only those facts I believe are necessary to support probable cause for a search warrant.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

7. The property to be searched consists of two cellular telephones ("the Devices"):

   a. One gold Samsung Galaxy S6 Edge cell phone, with IMEI: 352567072608575 (Device 1); and

   b. One black Samsung cell phone, model # SM-J727T1, with IMEI: 354804/09/114719/6 (Device 2).

8. Devices 1 and 2 were seized from the center console area of the Toyota Camry that Robert Elias PADILLA was driving in at the time of his arrest on June 6, 2018, in Vacaville, California.

9. Both devices were processed into evidence on June 6, 2018, in connection with Vacaville Police Department Case Number 18-04702, and have been in law enforcement's custody continuously since that time.

10. The applied-for warrant would authorize the forensic examination of these Devices for the purpose of identifying electronically-stored data particularly described in Attachment B.

## RELEVANT JUDICIAL ACTIVITY IN THE EASTERN DISTRICT OF CALIFORNIA

11. On June 14, 2018, based on the facts set forth below, I presented a criminal complaint and arrest warrant to United States Magistrate Judge Edmund F. Brennan, Eastern District of California. The complaint charged PADILLA with one count of possession with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1). Magistrate Judge Brennan signed the complaint and arrest warrant on that day. *See United States v. Robert Elias Padilla*, 2:18-mj-0116-EFB (E.D. Cal.).

12. On June 21, 2018, the grand jury for the Eastern District of California returned a one-count indictment against PADILLA, charging him with the same offense alleged in the complaint. *See United States v. Robert Elias Padilla*, 2:18-cr-0117-TLN (E.D. Cal.).

///

///

## PROBABLE CAUSE

13. On June 6, 2018, the Honorable Michael Mattice, Solano County Superior Court, signed a search warrant authorizing law enforcement to search Robert Elias PADILLA's person and vehicle, as well as a residence in Vacaville, and a hotel room in Dixon, where PADILLA was known to be staying. The warrant authorized officers to search for and seize evidence of methamphetamine-trafficking and firearms, among other items.[1]

14. Later that day, agents located PADILLA's rental car (a black 2018 Toyota Camry) parked in the carport at 166 Avenida Hidalgo in Vacaville, inside the El Matador Mobile Home Park. This address was the Vacaville home described in the search warrant.

15. At around 5:40 p.m., surveillance units saw PADILLA driving out of the mobile home park in the Toyota Camry. Detectives with the Vacaville Police Department's VICE unit conducted mobile surveillance and followed PADILLA as he drove through Vacaville, and eventually turned into a grocery store parking lot on Davis Street in Vacaville.

16. PADILLA drove through the parking lot, pulled into a parking stall, and stopped. The car was parked next to a dark Honda. Moments later, an adult male (Bradley PALMER) got into the Camry's front passenger seat.

17. At that point, the agent who was leading the operation (Vacaville PD Detective S. Lopez) decided to detain PADILLA and execute the search warrant for PADILLA's person and vehicle. Detective Lopez gave the order for agents to converge on PADILLA's car. Within seconds, another team of Detectives drove into the parking lot, activated their emergency overhead lights, and began driving towards PADILLA. When they did, PADILLA quickly reversed his car and pulled out of the parking stall. In the process, PADILLA collided with the dark Honda parked next to him.

18. In addition, as PADILLA was pulling out of the parking stall, he threw a black backpack from the Toyota Camry's driver's-side window, and then tried to flee in his car. Surveillance units note that Bradley PALMER (the passenger) did not have anything in his hands, or have the black backpack on his person, when he got into the Camry.

---

[1] A portion of the search warrant affidavit was sealed in keeping with California Evidence Code, Section 1041, and *People v. Hobbs*, 7 Cal. 4th 948 (Cal. 1994). The sealed portion includes tips and information about PADILLA's suspected drug-trafficking activities from two private citizens, as well as information from a paid informant. I note that this informant was arrested in Yolo County in April 2018, and later charged with possession of methamphetamine for sale (Cal. H&S § 11378). The Vacaville Police Department has since terminated this source as a paid informant. For purposes of the search warrant presented here, I am not relying on the probable cause set out in the sealed portion of the state search warrant affidavit, but am instead relying solely on the probable cause set forth below.

3

19. As PADILLA attempted to flee, the responding agents boxed in PADILLA's car with their own fully-marked police vehicles, and PADILLA was detained without incident.

20. Detectives searched the backpack and found several gallon-sized Zip-lock bags in the main compartment, which the agents estimated each contained 1-pound quantities of suspected methamphetamine, as well as several smaller plastic bags that the agents believed each contained ¼-pound quantities of methamphetamine. The backpack also had a functioning digital scale inside, which tested presumptively positive for the presence of methamphetamine on the weigh plate; clean packaging material in different sizes; and cups which were likely used a scoops for packaging the methamphetamine for sale. There were also four gallon-sized Zip-lock bags that had a white crystalline residue (suspected methamphetamine) inside them.

21. Two cellular phones were located on the Toyota Camry's center console area (Devices 1 and 2), but no additional evidence was seized from inside the car's interior. However, another box of sandwich baggies, a package of rubber bands, and several canisters of butane were found in the trunk.

22. In all, agents found 2,575 grams (5.68 pounds) of suspected methamphetamine inside the black backpack. This is the gross weight, including packaging. This evidence will be sent to the DEA's Western Laboratory for testing.

23. When PADILLA was taken into custody, his personal property included $2,311 in cash (seven $100 bills; one $50 bill; sixty-five $20 bills; fifteen $10 bills; nineteen $5 bills; and sixteen $1 bills). PADILLA had the cash in two large bundles in his right front pocket.

24. PADILLA was arrested and transported to the Vacaville Police Department. After being advised of his *Miranda* rights, PADILLA spoke with Detective Lopez. Detective Lopez asked PADILLA about the subject who got into the Camry (i.e., Bradley PALMER). PADILLA said that the man was someone he had known for a very long time, but PADILLA never identified PALMER by name.

25. When Detective Lopez told PADILLA that Vacaville PD Detectives had been monitoring him for several months, PADILLA said that he had been out of prison for five years, and that he had been "clean" for seven years. PADILLA said that he "got high" one night because he was stressed, and "it all went downhill after that." Detective Lopez asked PADILLA if he thought "it" would ever catch up to him, and PADILLA replied, "Everything comes to an end."

26. Detective Lopez asked PADILLA about the black backpack he was seen throwing out the driver's-side window. Lopez asked how much PADILLA thought was inside the backpack, and PADILLA replied, "You know I can't answer those questions when you guys got me on film and shit. That's going to . . . hurt me when I go to court." Detective Lopez asked PADILLA if he still wanted to answer his [Det. Lopez's] questions and PADILLA said that he would.

4

27. PADILLA said that he did not live at 166 Avenida Hidalgo, that only his daughter and girlfriend live there. PADILLA said that he stays in motels and that he had just checked out of a motel room that morning. PADILLA said, "I should have . . . stayed. I know better than to come to Vacaville."

28. Detective Lopez returned to the black backpack. He asked PADILLA if the backpack was his. PADILLA took a long silent pause before answering. He then stated, "No," and shook his head side-to-side. Detective Lopez ended the interview.

29. After PADILLA was taken into custody, but before the interview described above, agents responded to 166 Avenida Hidalgo in Vacaville. The agents spoke with several occupants and executed the search warrant at the home. At least two of the occupants explained that PADILLA would visit the home frequently to see his daughter and a woman he was involved with, but they said that PADILLA did not live at the home. Nothing significant was discovered at this location.

30. As I note above, on June 14, 2018, Magistrate Judge Brennan signed a criminal complaint and arrest warrant for PADILLA. *See* 2:18-mj-0116-EFB (E.D. Cal.). I took PADILLA into federal custody the next day and transported him to Sacramento, where I turned him over to the United States Marshals Service pending federal prosecution.

31. Based on my training and experience, and from what I have learned by consulting other agents, I know that mobile telephones:

    - preserve in their memory a history of incoming, outgoing, and missed calls;
    - contain in their memory a telephone book, which allows the user to store numbers and other contact information;
    - contain in their memory text messages sent, received, and drafted by the user;
    - have a voicemail function that allows callers to leave messages when the user does not answer;
    - contain other user-entered files such as "to-do" lists, which can provide evidence of a crime;
    - contain photographic data files, which can be evidence of criminal activity when the user took pictures of evidence of crime.

32. Mobile telephone companies also store the data described in the above-paragraph on their own servers and associate the data with particular users' mobile telephones. In addition, all of these functions are can be found on a "smart" phone or similar handheld device, as well as evidence of email communications.

33. Because there is probable cause to believe that PADILLA possessed the methamphetamine seized on June 6, 2018 with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1), I submit there is also probable cause to believe that information and records relating to these activities will be found stored in the two Devices seized and processed into evidence on that date, and in particular, will contain evidence of the types described in Attachment B.

34. Based on my training and experience as a Detective and FBI Task Force Officer, I know that drug-traffickers frequently use cell phones to facilitate their trafficking activities. Specifically, cell phones are used to call and text suppliers, customers, associates, and partners to facilitate the purchase, packaging, transportation, and sale of illicit substances. Address books and contact lists often include the names, monikers, and contact information for individuals and businesses that are involved in criminal activity. Furthermore, cell phones are equipped with digital cameras, and therefore often contain photographs and videos taken by individuals involved in drug trafficking, including "trophy" photographs of contraband, to include narcotics, cash, firearms, and other photographs of associates and business partners. Last, I know that some cell phones store the geolocation/GPS coordinates for the phone in the internal memory, which shows where the phone has been at any given date and time.

35. I also know that people who traffic in narcotics usually negotiate or discuss the particulars of their transactions, to include the price, the volume of drugs involved, and the meeting location, in advance of any transaction. Moreover, it has been my experience that these negotiations and discussions most frequently take place by way of phones, emails, and/or text messages. I know that cellular telephones are commonly referred to as tools of the drug trade

36. Given my training and experience, I believe that based on the amount of methamphetamine recovered in this case—over 5 pounds in all—I would expect that PADILLA would have used his cellular phone at some point in the days or weeks preceding June 6, 2018, to negotiate or discuss the details of the transaction from whomever supplied the drugs to him.

37. Devices 1 and 2 have been in law enforcement's possession continuously since they were processed into evidence on June 16, 2018. Based on my training and experience, I know the Devices have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same condition as they were when they were seized.

## TECHNICAL TERMS

38. Based on my training and experience, I use the following technical terms to convey the following meanings:

    - Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text

6

messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

- Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

39. Based on my training, experience, and research, I know that the Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, internet access device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, who they communicated with, and the content of those communications.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

40. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

41. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

    - Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    - Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    - A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw

conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

- The process of identifying electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

- Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

42. *Nature of examination.* Based on the foregoing, and consistent with Rule 41 (e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

43. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto any premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

44. Based on the foregoing, I submit that this Affidavit supports probable cause for a search warrant authorizing the forensic examination of the two Devices described in Attachment A, to seek the items described in Attachment B.

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

Michael A. Miller
Task Force Officer
Federal Bureau of Investigation

Sworn to and subscribed before me on August 3, 2018.

Hon. Deborah L. Barnes
United States Magistrate Judge

8

Approved as to form:

_____
Timothy H. Delgado
Assistant United States Attorney

## ATTACHMENT A

The property to be searched is as follows:

A. One gold Samsung Galaxy S6 Edge cell phone, with IMEI: 352567072608575 (Device 1); and

B. One black Samsung cell phone, model # SM-J727T1, with IMEI: 354804/09/114719/6 (Device 2).

Devices 1 and 2 were seized from the center console area of the Toyota Camry that Robert Elias PADILLA was driving in at the time of his arrest on June 6, 2018, in Vacaville, California.

Both devices were processed into evidence on June 6, 2018, in connection with Vacaville Police Department Case Number 18-04702, and have been in law enforcement's custody continuously since that time.

This warrant authorizes the forensic examination of the two devices described above for purposes of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1. All records on the Devices described in Attachment A that relate to violations of 21 U.S.C. § 841(a)(1), and involve Robert Elias PADILLA, his co-conspirators and associates, including:

   a. All names, words, telephone numbers, email addresses, time/date information, messages or electronic data in the memory of the mobile telephone or on a server and associated with the mobile telephone and described as:

      i. Call history (incoming, outgoing, and missed calls);
      ii. Text messaging history (incoming, outgoing, and drafts);
      iii. Telephone book (a/k/a "contacts list");
      iv. Data screen, file, or writing identifying the telephone number associated with the mobile telephone searched;
      v. Data screen, file, or writing containing serial numbers or other information to identify the mobile phone searched;
      vi. Voicemail;
      vii. Photo gallery;
      viii. User-entered messages (i.e., to-do lists); and
      ix. Any passwords used to access the electronic data described above.

   b. Lists of customers and related identifying information;

   c. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   d. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   e. Any information related to schedules and travel, including geolocation data and GPS coordinates stored on the Devices for the following dates: May 6, 2018, up to and including through June 6, 2018.

   f. Any information related to bank records, checks, credit card bills, account information, or other financial records.

2. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including text messages, voicemail messages or voice notes, any form of computer or electronic storage (such as flash memory or other media that can store data), videos, and any photographic form.

# # # #

# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | |
|---|---|
| In the Matter of the Search of: <br><br> One gold Samsung Galaxy S6 Edge cell phone, and one black Samsung cell phone, processed into evidence on June 6, 2018, in connection with Vacaville Police Department Case No. 18-04702. | ) <br> ) <br> ) Case No. <br> ) <br> ) <br> ) |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the     EASTERN     District of     CALIFORNIA
*(identify the person or describe the property to be searched and give its location):*

**See ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**See ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before     August 17, 2018     *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐     for     days *(not to exceed 30)*     ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:     8-3-18 @ 11:25am     _____
                                                                                                *Judge's signature*

City and state:     Sacramento, California          Hon. Deborah L. Barnes, U.S. Magistrate Judge
                                                                                                *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

### Certification

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

Subscribed, sworn to, and returned before me this date.

_____             _____
Signature of Judge                                         Date